UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Fawn Duchesne

    v.                                      Civil No. 18-cv-904-JD
                                              Opinion No. 2019 DNH 047
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


O R D E R

Fawn Duchesne seeks review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner that denied her application for disability insurance benefits under Title II. In support, she contends that the Administrative Law Judge ("ALJ") erred in weighing the medical opinion evidence, which caused him to assess an erroneous residual functional capacity. The Acting Commissioner moves to affirm.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings if they are supported by substantial evidence.

§ 405(g).  Substantial evidence is "more than a scintilla of evidence" but less than a preponderance.  Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 887 F.3d at 13.

## Background

Fawn Duchesne applied for disability benefits, alleging an amended disability onset date of June 3, 2015, when she was thirty-six years old.  She had previously worked as a teacher, a cashier, a waitress, a police officer, a photo developer, and a sandblaster/graphic designer.

Neither Duchesne nor the Acting Commissioner include information about the record evidence of Duchesne's mental or physical medical treatment in their factual statements.  Instead, both factual statements summarize the administrative proceedings and the opinions provided in the record.  Therefore, the background includes nothing about what treatment, if any, Duchesne may have had for mental or physical impairments.

A.  Procedural History

After the Disability Determination Services denied Duchesne's application, she requested a hearing before an ALJ. At the first hearing, Duchesne's representative requested consultative examinations. Therefore, the hearing ended.

Another hearing was held on February 28, 2017. During that hearing Duchesne asked to amend her alleged disability onset date. That request was granted, and the hearing ended.

A third hearing was held on July 23, 2017. Dr. John Kwock, a board certified orthopedic surgeon testified to give his opinion about Duchesne's claimed orthopedic impairments. That hearing was continued to allow a psychologist, Billings Fuess, Ph.D., time to review Duchesne's records. A fourth hearing was held on February 1, 2018, during which Dr. Fuess, Dr. Charles Cooke, and a vocational expert testified.[1]

The ALJ issued a decision on February 28, 2018, finding that Duchesne was not disabled. The ALJ found that Duchesne had severe impairments due to degenerative disc disease in her lumbar and cervical spine, fibromyalgia, small fiber neuropathy, anxiety/PTSD, depression, and a somatoform disorder. Based on opinions provided by Dr. Kwock, Dr. Cooke, Dr. Loeser, Dr. Williams, and Dr. Fuess the ALJ determined that Duchesne had the

---

[1] The same ALJ presided at the second, third, and fourth hearings.

3

residual functional capacity to do light work with some postural and activity limitations and with limitations to a low stress environment, only occasional interaction with the general public, and needing a non-critical supervisor.  Although the ALJ found that Duchesne was unable to perform any of her past work, he found that she could do other work as shown by the vocational expert's testimony.  The Appeals Council denied her request for review.

B.  Opinion Evidence

The record includes opinion evidence from Duchesne's treating physician, Warren Chin, D.O.; her treating psychologist, Cheryl Bildner, Ph.D.; consultant physicians, John Kwock, M.D., Charles Cooke, M.D., Peter Loeser, M.D.; James Williams, M.D.; and a consultant psychologist, Billings Fuess, Ph.D.

   1.  Medical Opinions
      a.  Dr. Chin

Duchesne's primary care physician, Dr. Chin, is an osteopath.  Dr. Chin provided a Physical Impairment Medical Source Statement on February 23, 2017.  He stated that Duchesne had been diagnosed with fibromyalgia and that she suffered from severe pain.  On the form, Dr. Chin checked the box showing that

pain would rarely interfere with Duchense's ability to work but then checked boxes that she had very limited ability to walk, stand, and sit, less than two hours in a work day. He also found that she could lift no weight at all and could not do postural activities.

      b.  <u>Dr. Kwock</u>

Dr. Kwock, who is a board certified orthopedic surgeon, testified at the third hearing as a medical consultant. Dr. Kwock found that Duchesne had a severe impairment due to spondylolisthesis at L5-S1 (lumbral and sacral spine level). He assessed Duchesne's residual functional capacity and found she could do work at the light exertional level, could sit, stand, and walk for six hours in an eight-hour day, and could frequently or occasionally do climbing and postural activities except that she could never crawl or work in a hazardous environment.

During his testimony, Dr. Kwock explained that an MRI done in June of 2017 of Duchesne's cervical spine, with a written impression of multilevel degenerative disc disease, did not show any additional impairment because it lacked clear evidence of disc herniation or neurological involvement. When asked about an examination report in December of 2014 that diagnosed "polysymptomatic distress," Dr. Kwock interpreted the report to

5

mean that the pain sensation was not from an anatomical condition but from an ingrained or sensitized memory of pain in that area.  Dr. Kwock discounted the treatment notes by Duchesne's primary care physician, Dr. Chin, about muscle spasms because the notes were inconsistent with the anatomy of the muscles in the cervical spine and because an observation of muscle spasm does not necessarily correlate with a pathology.

        c.   <u>Dr. Cooke</u>

Dr. Cooke, who is board certified in internal medicine and rheumatology, testified as a consultant at the fourth hearing held on February 1, 2018.  Dr. Cooke was called as an expert to focus on the effects of fibromyalgia, along with other issues.

Dr. Cooke reviewed various impairments from the record and found no functional limitations because of spinal issues, tachycardia and arrhythmia, or fibromyalgia that would meet a listed impairment.  Dr. Cooke explained that use of narcotic medication for non-specific back pain and fibromyalgia is not supported.  Dr. Cooke found that Dr. Chin's opinion that Duchesne was very limited in her physical abilities was not supported by the objective evidence and was based, instead, on what Duchesne told him.

He found that Duchesne, despite her impairments, could stand and walk for four to six hours in an eight-hour day and

had no limits on her ability to sit. He limited her to doing postural activities for two-thirds of a work day. She could lift and carry ten pounds frequently and twenty pounds occasionally. Dr. Cooke stated that Duchesne should avoid hazardous environments, including the use of ladders and scaffolds.

In response to questioning by Duchesne's counsel, Dr. Cooke addressed testing that was done to address small fiber neuropathy. Dr. Cooke testified that the results did not indicate small fiber neuropathy and instead sounded like fibromyalgia. Dr. Cooke also testified that Dr. Chin's notes about muscle spasms up and down the spine did not correlate with nerve root issues or radiculopathy. Instead, Dr. Cooke thought the symptoms were more likely caused by fibromyalgia or by a nonmedical issue such as tension or anxiety, with less severe pain. He disagreed that the level of pain would cause the degree of limitations that Dr. Chin found.

    d. Dr. Loeser

Dr. Loeser did a consultative examination of Duchesne on September 29, 2016. He diagnosed low back pain after fusion surgery at L5-S1. Dr. Loeser found no issues during his examination that would support significant limitations in

7

Duchesne's ability to function. He found no work-related limitations.

e. Dr. Williams

Dr. Williams provided a "Disability Determination Explanation" as part of the processing of Duchesne's application for benefits. Duchesne alleged a degenerative disc condition and other back issues as her impairments. Dr. Williams found a medically determinable impairment due to "Disorders of Back-Discogenic and Degenerative."

With respect to function, Dr. Williams found that Duchesne could occasionally carry twenty pounds, could stand or walk for six hours in an eight- hour day, and could sit for six hours in an eight-hour day. He limited her ability to do some postural activities to occasionally and frequently and found no other limitations.

2. Psychological Opinions

a. Dr. Bildner

Dr. Bildner had therapy sessions with Duchesne, beginning in September of 2016. She provided two opinions, one on October 5, 2016, and the second on July 22, 2017.

In her first opinion, Dr. Bildner found that Duchesne had no limitations in her ability to remember and carry out

8

instructions; marked limitations in her ability to interact appropriately with co-workers, supervisors, and the public because of Duchesne's reports of pain, and an inability to initiate and sustain tasks.

In her second opinion, Dr. Bildner noted diagnoses of PTSD, unspecified anxiety disorder, major depressive disorder, somatic disorder, and ADHD "by report." She noted the focus of her treatment was to lessen anxiety and depression and to manage pain. She checked moderate to marked severity of Duchesne's mental impairments. She also checked moderate and marked limitations in Duchesne's ability to do work activities, with some extreme limitation in her ability to do unskilled work.

      b.  Dr. Fuess

Dr. Fuess, who is board certified in clinical psychology, testified at the third and fourth hearings as a consultant. Dr. Fuess found severe medically determinable impairments based on Dr. Bildner's opinion of PTSD, anxiety disorder, major depression, and a somatic disorder. He found that she could do work with simple and even more complex instructions in a low-stress environment. Dr. Fuess restricted Duchesne to limited interaction with the public, moderate limitations in interacting with co-workers and supervisors, and needing a supportive

9

supervisor. She also had mild to moderate limitation in her ability to interact with co-workers.

When questioned by Duchesne's counsel, Dr. Fuess testified that Dr. Bildner's treatment notes and notes from medical providers did not support the severity of the limitations she checked on the opinion forms. Duchesne's counsel reviewed specific treatment notes, but Dr. Fuess disagreed that the comments supported the severity of the limitations that Dr. Bildner found, taken in light of the lack of objective evidence, such as mental status reports by Dr. Bildner, and Duchesne's ability to function through the treatment sessions.

## Discussion

Duchesne contends that the ALJ erred in giving more weight to the medical opinions of consultant physicians and the consultant psychologist than to her treating doctor, Dr. Chin, and her treating psychologist, Dr. Bildner. Based on that alleged error, Duchesne argues that the residual functional capacity assessment was wrong, precluding the ALJ's finding that she is not disabled. The Acting Commissioner argues that the ALJ properly weighed the opinion evidence and properly assessed Duchesne's residual functional capacity.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of

[a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). Medical opinions are evaluated based upon the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other factors including the understanding the source has of the social security system. § 404.1527(c).

A. Treating Providers

In general, an ALJ will give more weight to the opinion of a treating source and may give that opinion controlling weight if it is well supported and not inconsistent with other medical evidence in the record. § 404.1527(c)(2). The ALJ is required to give "good reasons" in the disability decision for the weight given to treating source opinions. Id. In support of her motion to reverse, Duchesne argues that the reasons given for discounting the opinions of Dr. Chin and Dr. Bildner were not the required good reasons.

1. Dr. Chin

The ALJ gave Dr. Chin's opinion little weight because it was not supported by cites to diagnostic testing and was over stated in light of the objective evidence, testing, and Duchesne's reports about her daily activities.  Dr. Chin's treatment notes did not show the level of disability that was expressed in the opinion.  In particular, Dr. Chin's neurological examinations show normal results despite Duchesne's complaints of pain, although Dr. Chin also recorded observing muscle spasms.[2]  Other test results showed little or no physical cause for the pain, which Dr. Chin acknowledged.  The ALJ also noted that Dr. Cooke and Dr. Kwock testified that Dr. Chin's opinion was not supported by the record evidence or by Dr. Chin's own treatment notes.

Duchesne argues that the ALJ did not take Dr. Chin's opinions in the appropriate context because the limitations Dr. Chin assessed were in a competitive work environment, the limitations were based on fibromyalgia, Duchesne's function report showed more limitations than the ALJ found.  As the ALJ noted, Dr. Chin found she was incapable of doing even low stress work, so that his opinion was not limited to a competitive work

---

[2] Dr. Kwock explained in his testimony why those observations provided little medical evidence.

environment.  The ALJ relied on the opinion of Dr. Cooke to assess the effect of fibromyalgia, and therefore did not ignore that diagnosis.  With respect to Duchesne's activities, while her function report described limited ability to function, other parts of the record show that she engaged in more activities than she reported.

    The ALJ gave good reasons for discounting the weight given to Dr. Chin's opinion.

### 2. Dr. Bildner

    The ALJ gave little weight to the opinions provided by Duchesne's treating psychologist, Dr. Bildner.  The ALJ explained that in her first opinion Dr. Bildner focused on the effects of pain reported by Duchesne rather than any effects of Duchesne's mental health impairments on her ability to function.  The ALJ noted that the severity of the limitations that Dr. Bildner found was inconsistent with Duchesne's daily activities, her application for benefits, her function report, and Dr. Bildner's treatment notes.

## B. Consultants

    ALJs are required to consider the opinions of state agency medical and psychological consultants "because [they] are highly qualified and experts in Social Security disability evaluation."

20 C.F.R. § 404.1513a(b)(1). ALJs may also receive medical evidence from other experts. § 404.1513a(b)(2). The opinions of state agency consultants and medical experts are assessed based on the same factors used for considering opinions from treating providers. § 404.1513a(b); § 404.1527(c).

The ALJ relied on the opinions provided by Dr. Kwock, Dr. Cooke, Dr. Loeser, Dr. Williams, and Dr. Fuess to assess Duchesne's residual functional capacity. Despite Duchesne's criticisms of those opinions, the ALJ adequately explained the reasons he relied on them. Duchesne has not shown that the ALJ erroneously gave great weight to the consultants' opinions.[3]

Therefore, substantial evidence supports the ALJ's residual functional capacity assessment and the decision that Duchesne is not disabled.

---

[3] To the extent Duchesne argues that the ALJ's assessment is not supported by substantial evidence because it is not entirely supported by a single opinion, she is mistaken. Instead, an ALJ may use portions of expert opinions and need not adopt one opinion in whole. Perry v. Social Sec. Admin. Comm'r, 2011 WL 4907305, at *7 (D. Me. Oct. 13, 2011). "The basic idea which the claimant hawks—the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case—is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 7) is denied. The Acting Commissioner's motion to affirm (document no. 8) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 19, 2019

cc: D. Lance Tillinghast, Esq.
    Rami M. Vanegas, Esq.